**The STATE of Delaware, upon the relation of the Secretary of the Department of Transportation, Plaintiff,**

v.

**Richard L. MUMFORD et al., Defendants.**

**C.A. No. 96C–04–018 SCD.**

Superior Court of Delaware, New Castle County.

Submitted: Feb. 11, 1999.[1]
Decided: March 30, 1999.

1. The Plaintiff's motion to revoke the admission *pro hac vice* of Charles R. Diffenderffer

Richard L. Abbott, Theisen, Lank, Mulford & Goldberg, Wilmington, for plaintiff State of Delaware.

Charles R. Diffenderffer, Brown, Diffenderffer, Wagonheim & Kearney, LLP, Towson, Maryland, and Thomas D. Whittington, Jr., Whittington & Aulgur, Wilmington, for Defendant Richard L. Mumford.

## MEMORANDUM OPINION

DEL PESCO, Judge.

### Introduction

Before the Court is plaintiff's motion to revoke the admission *pro hac vice* of Charles R. Diffenderffer, attorney for the defendant, for unprofessional conduct during a deposition.

### Factual Background

This is a condemnation action in which the State has acquired a part of the property owned by Richard L. Mumford ("Mumford") located along Route 13 in Appoquinimink Hundred (the "property") for the purpose of constructing a new State Route 1. Mumford disagrees with the compensation being offered by the State and further claims that the acquisition has diminished the value of the remaining property because of its effect on ingress and egress by commercial vehicles.

Counsel for Mumford is Charles R. Diffenderffer ("Diffenderffer"), a member of the bars of the State of Maryland and the District of Columbia. This Court, upon motion of then local counsel,[2] on August 27, 1997, admitted Diffenderffer *pro hac*

was filed on June 8, 1998, and answered on June 30, 1998. Oral argument on the matter was held on July 7, 1998. James T. Vaughn, Jr., Esquire, was local counsel for the defendant at that time. At the hearing, the Court ordered that a supplemental deposition of Richard Mumford be conducted. Thereafter, Mr. Vaughn withdrew as local counsel due to his appointment to the bench of the Superior Court. The defendant indicated he was searching for new local counsel. At a status conference in December 1998, called because the further deposition of Mumford still had not been taken and no substitute local counsel had appeared, I ordered that judgment would be entered, in the amount of the State's appraisal, if the defendant was not represented by local counsel by February 12, 1999. On February 11, 1999, Thomas D. Whittington, Jr., Esquire, entered his appearance. I consider the motion submitted as of the date of Mr. Whittington's appearance.

2. Richard H. May, Esquire, of Young Conaway Stargatt & Taylor. Mr. May withdrew his appearance as attorney for defendants on June 5, 1998 (docket no. 63).

*vice* to practice in Delaware. In his sworn affidavit accompanying the motion, Diffenderffer acknowledged he would be bound by the Delaware Lawyers' Rules of Professional Conduct and all Rules of the Court.[3] Diffenderffer also acknowledged that he had reviewed the Statement of Principles of Lawyer Conduct.

As a result of the dispute, the plaintiff took the deposition of Mumford in which Mumford behaved abominably.[4] He was crude, frequently used obscenities,[5] and even threatened the deposing attorney with physical violence. Further, Mumford used the deposition as a soapbox to express his frustration over the condemnation of the property rather than to provide appropriate responses to direct questions. As examples of the aforementioned language and conduct, in response to an arguably provocative question, Mumford responded:

Q. I am talking about safety. Isn't it true that you told Tiptoe Trucking that they were no longer allowed to maneuver, as they had in the past, their vehicles in your visitors parking lot, but instead they had to back up onto Route 13 with the intent to cause an accident to try and create a situation that you could utilize?

A. Kiss my ass. You are out of line. I'm a self-made millionaire. I earned every dime I got. And if you think I am Fucking stupid. You can kiss my ass. Flat out, no if's, and's, or but's. Flat out. I challenge you to bring somebody to court that I told them that. I challenge you.

MR. DIFFENDERFFER: You better have some evidence.

THE WITNESS: Tell you what. You tell anybody that, and I will sue you personally. You piece of shit. You got a lot of nerve. If you think I am Fucking stupid. I got more Fucking safety awards than you can shake a stick at. I will tell you what, you are full of shit. I should throw you out that Fucking window.[6]

In another instance, when asked a simple, direct question whether it was a "reasonable maneuver for an exiting vehicle to back up and make way for [an] entering vehicle"Mumford responded:

A. Have the Secretary of the Department of Transportation tell me where an entrance exist like that in the State of Delaware—another one. You wouldn't give me an entrance like that if I went right now and applied for one. You would send me packing.

But to save money and save face, they are going to gamble on killing somebody at my entrance. And let them go. That sign is going to stay there for the next 100 years. And when somebody gets killed there, you know who is going to back them financially—Mumford. And I will put a quarter of a million dollars in it. That eminent domain ain't going nowhere there when you kill somebody....

MR. ABBOTT: Could you read the question back again, please.

THE WITNESS: No. It is not. It is an asinine maneuver ... I'm shocked that the Secretary of the Department of Transportation would suggest such a

---

3. Under the rules of the Superior Court lawyers admitted *pro hac vice* are subject to the Delaware Rules of Professional Conduct, and are required to review the Delaware State Bar Association Statement of Principles of Lawyer Conduct.

4. Counsel present at both depositions were Richard L. Abbott, Esquire, for the plaintiff and Charles R. Diffenderffer, Esquire, for the defendant. Local counsel was not present at

the deposition nor required under Superior Court Civil Rule 90.1(d).

5. The deposition is peppered with such expressions as "bullshit," "ass," "fucking," "Son of Bitches," "shit," and "God damn." Mumford Dep. at 19, 22, 25, 26, 35–36, 48, 55, 69, 70–71, 77.

6. Mumford Dep. at 70–71.

thing. She is an idiotic [sic].[7]

In still another instance, Mumford cut Mr. Abbott's question off to respond:

Q. It is true, is it not, that if the gate had been open to Standard Equipment's property—

A. If my aunt had a dick, she would be my uncle. If this or that. That man has a right to open his business when he wants to. Come on. This is bad. This is 60 minute shit right here.[8]

During the deposition Diffenderffer did not make any attempts to ameliorate the disruptive and offensive conduct of Mumford. Instead, Diffenderffer appears, at times, to assent to or encourage the conduct of Mumford. In addition, Diffenderffer repeatedly appears to be communicating inappropriately with the witness.[9] As examples:

Q. On the northern part, it is true, is it not, that Standard Equipment and Boulden Oil did not use any of the area of acquisition for maneuvering and turning their trucks?

A. I know that Standard Equipment used it from time to time. When truck drivers enter an area like this, they are going to utilize whatever they can to get turned around and do what they have to do.

MR. DIFFENDERFFER: Can you be specific about the area we are talking about? Are you talking about—

MR. ABBOTT: Any of the area of acquisition.

MR. DIFFENDERFFER: All the way back—

MR. ABBOTT: Any of the area of acquisition. Any of the area of acquisition.

THE WITNESS: Basically, from the fence out to the road.

MR. DIFFENDERFFER: No. But the acquisition goes all the way back—back down the side of the fence and takes that loop. I want to know if we're talking about—

MR. ABBOTT: Again, you are coaching the witness. This is clearly coaching the witness.

MR. DIFFENDERFFER: I'm asking you a question.

MR. ABBOTT: This is unbelievably in violation of the ethical rules—

THE WITNESS: Let's talk about ethics. Let's talk about ethics.... Who was in the paper for Fucking up everything in the real estate? Jesus Christ. Let's talk about ethics. Who pissed all the money away in the State of Delaware over the Benson Building? Who Fucking had money in with the God damn guy down there?....

MR. DIFFENDERFFER: When you ask a question about north of an access road, I'm asking you, do you mean north all the way through the property, or do you mean to stop at a certain point? I believe that's a valid objection. If you want to pull out one of your plats and show him the exact area that you are talking about, then I will be corrected. Right now, I'm objecting to the form and the foundation of your question. I believe it is entirely inappropriate.

. . . .

Q. What do you mean put a sign up?

A. That sign that is out there right now about the Governor and Ann Canby. That is the kill zone, Buddy. Believe that....

Q. How does that relate to the compensation that you believe you are entitled to in this case?

---

7. Mumford Dep. at 26–27.

8. Mumford Dep. at 69.

9. Under Superior Court Civil Rule 30(d) an attorney may not "consult or confer with the deponent regarding the substance of the testimony already given or anticipated" nor may the attorney "suggest to the deponent the manner in which any question should be answered." Super.Ct.Civ.R. 30(d)(1). Further, an attorney may instruct a deponent not to answer only when necessary to preserve a privilege. *Id.*

MR. DIFFENDERFFER: I object. You are asking for a legal conclusion. I think your actions are completely inappropriate, and I instruct you not to answer.

THE WITNESS: That is my answer.

MR. DIFFENDERFFER: Ask a prudent question, Counselor.[10]

### Claims of the Parties

The plaintiff argues that Diffenderffer has abused the privilege of representing the defendant in that he demonstrated a lack of civility and professionalism by "coaching the witnesses" during the depositions, by failing to control or attempt to control the objectionable conduct of his client, and by encouraging the conduct of his client. The defendant denies Diffenderffer coached any witnesses or that he should be held accountable for the conduct of his client. He further denies that he encouraged or participated in any alleged objectionable conduct.

### Discussion

Under both the Delaware Lawyers' Rules of Professional Conduct (the "Canons") and the Delaware State Bar Association Statement of Principles of Lawyer Conduct (the "Principles of Lawyer Con-

duct"), counsel for the defendant has a responsibility to the Court.[11] That responsibility includes a duty to ensure the integrity of the discovery process.[12] It should be remembered:

Depositions are the factual battleground where the vast majority of litigation takes place.... Thus, it is particularly important that this discovery device not be abused. Counsel should never forget that even though the deposition may be taking place far from a real courtroom, with no black-robed overseer peering down upon them, as long as the deposition is conducted under the authority of the rules of this court, counsel are operating as officers of this court. They should comport themselves accordingly; should they be tempted to stray, they should remember that [a] judge is but a phone call away.[13]

In this matter, Mumford's repeated profanities, hostile demeanor, and soapbox antics displayed a severe lack of respect to this Court as well as to the deposing attorney. Under the spirit and framework of both the Canons and the Principles of Lawyer Conduct, Diffenderffer was obligated to take steps to restrain that behavior and attempt to restore deco-

10. Mumford Dep. at 34–35, 72.

11. The Canons describe a lawyer as "a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." The Preamble further states that "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." The Principles of Lawyer Conduct state "[p]rofessional civility is conduct that shows respect not only for the courts and colleagues, but also for all people encountered in practice."

12. The Delaware State Bar Association Statement of Principles of Lawyer Conduct states, in relevant part:

The purpose of adopting these Principles is to promote and foster the ideals of professional courtesy, conduct, and coopera-

tion.... [A] lawyer should ... treat all persons, including adverse lawyers and parties, fairly and equitably.... A lawyer should use pre-trial procedures, including discovery, solely to develop a case for settlement or trial.... Questions and objections at deposition should be restricted to conduct appropriate in the presence of a judge.

Rule 3.5(c) of the Canons provide: "A lawyer shall not ... (c) engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct which is disregarding to a tribunal."

Rule 8.4 of the Canons state that it is professional misconduct for a lawyer to violate the rules through the acts of another or "engage in conduct that is prejudicial to the administration of justice."

13. *Paramount Communications v. QVC*, Del. Supr., 637 A.2d 34, 55 n. 34 (1994) (quoting *Hall v. Clifton Precision*, E.D.Pa. 150 F.R.D. 525, 531 (1993)).

rum. Otherwise, the integrity of the discovery process is jeopardized. The record does not support the conclusion that Diffenderffer made any attempt to control his client's behavior. To the contrary, he fanned the fire.

Because the Court finds the continued admission of Charles R. Diffenderffer in-appropriate and inadvisable, his admission is revoked.[14]

IT IS SO ORDERED.

14. Super.Ct.Civ.R. 90.1(e).